UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MIGUEL RAMOS TORRES, )
    Plaintiff )
)
v. ) Civil No. 3:18-10566-MGM
)
JOHNSON & JOHNSON and )
ETHICON, INC., )
    Defendants )

## ORDER ON PLAINTIFF'S MOTION FOR COURT TO HEAR PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES WHICH WAS PENDING BEFORE SUPERIOR COURT UPON REMOVAL
(Dkt. Nos. 31 & 31-1)

ROBERTSON, M.J.

    I.    RELEVANT BACKGROUND

In this product liability action, the plaintiff, Miguel Ramos Torres ("Plaintiff"), alleges his hernia was repaired with a Hernia Mesh Polypropylene 3D Patch System ("3D Patch") designed, manufactured, and sold by the defendants, and that, in the years following his surgery, Plaintiff experienced unexplained infections and abdominal pain. During exploratory surgery, doctors discovered Prolene protruding from Plaintiff's umbilical area. Eventually, he had revision surgery to remove the 3D Patch.

Plaintiff filed suit in the Superior Court Department of the Massachusetts Trial Court. On March 23, 2018, the defendants removed the case to this court (Dkt. No. 1). Plaintiff's motion to remand the case to state court was unsuccessful (Dkt. No. 27). Before the case was removed, Plaintiff's Motion to Compel Further Answers to Interrogatories From Defendant Ethicon, Inc. had been filed in state court (Dkt. No. 31-1) ("Plaintiff's Motion"). Defendants Johnson & Johnson and Ethicon, Inc. ("Ethicon") had filed an opposition to Plaintiff's motion to compel (Dkt. No. 31-2). After Plaintiff's remand motion was denied, Plaintiff filed a Motion for

1

Court to Hear Plaintiff's Motion to Compel Answers to Interrogatories which was Pending Before Superior Court Removal (Dkt. No. 31). The court heard argument from the parties on Plaintiff's Motion (and two other discovery motions filed by Plaintiff) at the July 30, 2018 Rule 16 scheduling conference (Dkt. No. 56). At the conclusion of the scheduling conference, the court took Plaintiff's Motion under advisement. For the following reasons, the court DENIES Plaintiff's Motion. As to limited aspects of Plaintiff's Motion, denial is without prejudice to a renewed motion by Plaintiff to compel supplemental interrogatory response(s) after additional discovery has been conducted if conferring pursuant to Local Rule 7.1 does not resolve remaining disputes, if any, between the parties.[1]

II. ANALYSIS

A. Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). There are limits on discovery. Nonetheless, "[a]s a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, Civil Action No. 14-

---

[1] It is possible that Plaintiff has propounded some discovery requests for relevant information to which Ethicon has not adequately responded. Plaintiff has not shown this to be so. Based on Ethicon's opposition to Plaintiff's Motion, including communications among counsel submitted in support of the opposition, it appears that Plaintiff's approach to his obligation to confer in good faith to narrow areas of dispute leaves much to be desired. *See* Local Rule 7.1(a)(2). The court expects counsel to identify actual disputes and make genuine efforts to confer in an attempt to resolve those disputes before filing a motion to compel.

cv-10571-LTS, 2015 WL 4504937, at *1 (July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green v. Cosby*, CIVIL ACTION N. 14-cv-30211-MGM, 2015 WL 9594287, at *2 (D. Mass. Dec. 31, 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)).

The interrogatories at issue are directed to Ethicon. In response to most of the interrogatories at issue, Ethicon answered in part by invoking Fed. R. Civ. P. 33(d) ("Rule 33(d)"), which provides:

> OPTION TO PRODUCE BUSINESS RECORDS. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (included electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) Specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Rule 33(d).

Case law from this court provides that Ethicon, as the party seeking to rely on Rule 33(d), must represent that the answer to the interrogatory at issue will be found in the business records it identifies; must show that there would be a sufficiently onerous burden on Ethicon if it is not permitted to invoke Rule 33(d); and, finally, that the burden of deriving the information from the business records is substantially the same for the interrogating party as for the responding party.

3

This requires, among other things, that the responding party adequately identify the records from which the information requested can be derived. *See Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556-57 (D. Mass. 1986); *see also Sabel v. Mead Johnson & Co.*, 112 F.R.D. 211, 212-13 (D. Mass. 1986). In objecting to Ethicon's resort to Rule 33(d), Plaintiff has "the burden to show that deriving or ascertaining answers is not substantially the same for both parties." *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 111 F.R.D. 118, 320 (D. Mass 1984). Further, "[t]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." *Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H., 2005)). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." *Id.* (citing *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 509 (D.S.D. 2015)).

## B. Interrogatories at Issue

### a. Interrogatory No. 2

In summary, Plaintiff's interrogatory no. 2 asked Ethicon to explain the complete process it followed to obtain "FDA 501K market clearance" for the 3D Patch, including: (a) identifying each individual involved with designing or testing the product; (b) identifying all safety studies conducted for the product and those who conducted the studies; (c) if Ethicon claimed that the 3d Patch was the substantial equivalent of another product on the market, identifying the predicate device, stating when it was given FDA clearance, and identifying all safety studies done on it before it was given FDA clearance, including identifying all those involved in conducting the studies; (d) if any substantially equivalent device was identified in

4

response to subpart (c), identifying that device, stating when it was given FDA clearance, identifying all safety studies done on it before it was given FDA clearance, including identifying all individuals who conducted the studies; and (e) identifying where the 3d Patch was manufactured and identifying all employees responsible for material specifications and quality assurance (Dkt. No. 31-2 at 5-6).

In response, Ethicon identified a single employee whom, it represented, had primary responsibility for the design and testing of the 3D Patch; identified two predicate devices and provided additional information concerning those devices; described and identified by Bates number documents from which additional information responsive to subparts (b) through (d) could be ascertained; and answered subpart (e) by identifying three facilities where different steps in the manufacturing process for the 3D Patch are performed without identifying any employees responsible for materials specification or quality assurance.

Plaintiff's objections to Ethicon's responses appear to be threefold. First, Plaintiff contends, Ethicon has failed to identify all involved employees in response to subparts (a) and (e) and should be required to supplement; second, Ethicon is not entitled to rely on Rule 33(d) in responding to subparts (b) through (d); and third, as to the documents it references, Ethicon has failed to provide "useable data" that is accessible to Plaintiff. For the most part, these objections are unpersuasive.

As to the first contention, the court finds that Plaintiff's request that Ethicon identify *all* current and former employees involved in the design, testing, manufacturing, and quality control for the 3D patch is overly broad and unduly burdensome. While the court is not persuaded that Ethicon's identification of a *single* employee with design and testing obligations is a sufficient response to subparts (a) and (e) of interrogatory no. 2, Plaintiff has not suggested any reasonable

compromise that would render his requests for the identification of employees with relevant knowledge reasonable in scope. It seems probable that, with discovery at its inception, Plaintiff lacks information that would enable him to describe a suitably limited group of employees whose identities should be disclosed. Accordingly, this aspect of Plaintiff's motion to compel is denied without prejudice to Plaintiff filing a subsequent motion to compel the identification of a reasonably defined and limited subset of employees responsible for design, testing, and quality assurance, *subject to his obligation to confer in good faith with Ethicon* in compliance with Local Rule 7.1 before any such motion is filed.

As to the second contention, Ethicon has complied with its obligations for purposes of relying on Rule 33(d). Ethicon has represented that information that is responsive to Plaintiff's interrogatory no. 2 will be found in the business records identified in its interrogatory response. Given the description of the documents identified in Ethicon's interrogatory answer, the representation appears reasonable. Ethicon has specifically identified relevant records by Bates numbers in documents it has produced to Plaintiff, and the ranges of Bates numbers identify reasonably limited numbers of relevant documents. *See Sabel*, 112 F.R.D. at 212-13. For his part, Plaintiff has made no showing that the burden of ascertaining the answers he seeks is not substantially the same for both parties. Indeed, based on oral argument, it seems clear that Plaintiff did not view the documents identified by Ethicon before filing his motion to compel. "Plaintiff's expressions of general discontent with having to obtain discovery pursuant to the provisions of [Rule 33(d)], however severe the discontent may be, is not a sufficient *showing* under the law for the Court to deny [Ethicon] the option the rule provides." *Petroleum Ins. Agency, Inc.*, 111 F.R.D. at 320 (emphasis in original). Ethicon is entitled to rely Rule 33(d) in responding to Plaintiff's interrogatories.

As to Plaintiff's third contention that Ethicon has failed to provide the relevant business records in an accessible format, the court has already rejected this contention. Plaintiff filed a Motion to Compel Compliance with State Court Order of Producing Unobstructed, Useable and Viewable Documents (Dkt. No. 30), which the court denied at the initial scheduling conference (Dkt. No 54). In his document production requests, Plaintiff requested "[a] complete copy of all documents [Ethicon had] produced in the Hernia Mesh MDL Hernia Mesh Litigation, Case Number 2781, Story, J. (Ethicon Hernia Mesh Products Liability Litigation)" (Dkt. No 31-2 at 10). Ethicon produced these documents to Plaintiff, unencrypted, in the searchable TIFF format which was mandated in the multidistrict litigation. This is the same format in which Ethicon has produced documents in hernia mesh litigation in cases across the country (Dkt. No. 36), and it is a reasonable format for production. *See, e.g., U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 232, 244-45 & n.15 (S.D. Cal. 2015). Plaintiff has not represented that his document production requests specified production in a format other than TIFF. Nor did he show that there was a cost effective manner in which Ethicon could produce all of the documents it produced in the multidistrict litigation and in other cases across the country in a different format. A party generally is not required to produce the same electronically stored information in more than one form. Fed. R. Civ. P. 34(b)(2)(E)(iii). Plaintiff has not shown why this standard rule should not apply in this case generally and as to the documents identified in Ethicon's interrogatory answers. Moreover, Ethicon has, according to its undisputed representations, gone beyond its obligations to accommodate Plaintiff by making subsets of relevant documents available in different formats (Dkt. No. 31-2 at 1-2).

Insofar as Plaintiff's Motion seeks to compel a supplemental answer to his interrogatory no. 2, the motion is denied without prejudice to a further motion to compel Ethicon to identify

specific employees in response to subparts (a) and (e) if there is a remaining dispute on this point *after the parties confer* and if Plaintiff is able to describe a suitably limited group of individuals.

    b. Interrogatory No. 3

In summary, Plaintiff's interrogatory no. 3 asked Ethicon to explain the design process for the 3D Patch, including: (a) identifying the individual(s) who designed the product; (b) identifying each part of the 3D patch; (c) identifying and describing the components of the 3D Patch and identifying the origin of the component materials; (d) identifying other medical devices in which the same component materials are used; and (e) identifying changes, if any, to the 3d Patch (Dkt. No. 31-2 at 9).

In response, Ethicon identified the same single employee that it identified in response to interrogatory no. 2, described the 3D Patch in some detail, listed 16 other currently marketed products that contain Prolene, and further responded to subparts (a) through (e) of the interrogatory by describing and identifying by Bates number documents from which additional information responsive to subparts (a) through (e) could be ascertained. Plaintiff's objections to Ethicon's answer to interrogatory no. 3 are unpersuasive for the reasons set forth above in connection with Ethicon's response to Plaintiff's interrogatory no. 2. Plaintiff apparently has alleged shortcomings in Ethicon's response to interrogatory no. 3 without any review of the documents Ethicon identified pursuant to Rule 33(d). Insofar as Plaintiff's Motion seeks to compel a supplemental answer to his interrogatory no. 3, the motion is denied. The denial is again without prejudice to a further motion to compel Ethicon to identify specific employees in response to subpart (a) if there is a remaining dispute *after the parties confer* and if the Plaintiff defines a suitably limited group of individuals.

    c. Interrogatory No. 4

Plaintiff's interrogatory no. 4 asks if any "Failure Modes" were identified in the design and testing phase of the 3D Patch, and if so, asks Ethicon to (a) identify all failure modes known to Ethicon when it obtained FDA approval for the 3D Patch; (b) identify all risks to consumers known to Ethicon when it obtained FDA market clearance for the 3D Patch; (c) identify manufacturing specifications or "reactionary plans" which Ethicon implemented to address any failure modes Ethicon had identified; (d) identify instructions provided to surgeons to inform them about any identified failure modes; and (e) identify with particularity all changes made to the 3d Patch from April 27, 2001 to the present and state the reasons for any such changes (Dkt. No. 31-2 at 12).

In response, Ethicon acknowledged generally that, before designing and marketing the 3D patch, it knew that all hernia mesh products had some risks (*id.*). It further responded by identifying documents from which, Ethicon represented, the answers to Plaintiff's interrogatory number 4 could be ascertained (*id.* at 12-13). Plaintiff's contention that Ethicon has not answered this interrogatory is nothing more than a claim that Ethicon cannot rely on Rule 33(d) to answer an interrogatory. That contention fails for the reasons set forth above. *See Petroleum Ins. Agency*, 111 F.R.D. at 320. So much of Plaintiff's Motion as seeks to compel Ethicon to supplement its answer interrogatory no. 4 is denied.

    d. <u>Interrogatory No. 5</u>

Plaintiff's interrogatory no. 5 asked, if Ethicon received any "Voice of Concern Complaints," "Adverse Event Complaints," or "MAUDE Complaints" about the 3D Patch after April 27, 2001, that Ethicon (a) identify the exact number of complaints received, specifying the month and date of any such complaints; (b) explain where such complaints are kept by Ethicon;

(c) identify all employees responsible for investigating such complaints; and (d) explain where all "Risk escalation" files for the 3D Patch are kept (Dkt. No. 31-2 at 14-15).

In response, as to subpart (a), Ethicon identified an FDA website where a list of MAUDE complaints about the 3D Patch is available stripped of confidential individual health information. If material sought in discovery is readily obtainable from a public source such as the FDA, referring the interrogating party to the public source is an appropriate discovery response. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (discovery from the interrogated party may be limited if the information requested can be obtained for another source that is more convenient and less expensive); *In re New Eng. Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 2013 WL 6058483, at *7. Ethicon also attached a separate list of complaints it had received about the 3D Patch to its interrogatory answers. The company identified the locations in which information about complaints is maintained and it identified five employees responsible for investigating and responding to complaints. Plaintiff's objection to Ethicon's response is nothing more than a vague, undeveloped, and unsupported contention that Ethicon is required to do more. This does not satisfy Plaintiff's obligation to identify the specific information that Ethicon has failed to produce and establish its relevance to his claims. *Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1. Accordingly, so much of Plaintiff's Motion as seeks to compel Ethicon to supplement its answer to interrogatory no. 5 is denied.

 e. <u>Interrogatory No. 6</u>

Plaintiff's interrogatory no. 6 asked whether Ethicon had initiated any Health Hazard Evaluations ("HHE") or "CAPAs" (Corrective and Preventative Action) for the 3D Patch or any of Ethicon's mesh products, and if so, to (a) identify the individuals who conducted such reviews; (b) identify the product that the was subject of the HHE or CAPA; (c) state the reasons

for the HHE or CAPA; (d) state the conclusions of the HHE or CAPA; (e) if Ethicon ever recalled any of its hernia mesh products, state the date and reason(s) for any such recalls; and (f) state the location of Ethicon's business records identified in response to interrogatory no. 6. Ethicon responded that it had initiated HHEs and CAPAs with respect to the 3D Patch and identified by Bates number the documents it had produced concerning these HHEs and CAPAs; stated that the 3D Patch had not been the subject of a recall in the United States; and pointed Plaintiff to sources for information about HHEs and CAPAs conducted for other of its products. Ethicon objected on the grounds of relevancy and burden to the extent the interrogatory called for additional or different information.

Plaintiff asserts that Ethicon failed to provide any particular answers to subsections (a) though (f). This is manifestly not true: Ethicon answered that it had conducted HHEs and CAPAs related to the 3D Patch and, pursuant to Rule 33(d), appropriately identified the documents reporting the details of those product safety reviews. Ethicon identified sources for information about product safety reviews related to other of its products, and objected to providing detailed information concerning mesh hernia products other than the 3D Patch which allegedly injured Plaintiff on grounds of relevance and undue burden. Plaintiff's vague, undeveloped, and unsupported assertion that Ethicon should do more is not sufficient to satisfy his initial burden of showing that the further discovery he apparently is requesting is relevant, nor does it appear proportional to the needs of the case. *See Cont'l Ins. Co.*, 2016 WL 1642626, at *1. So much of Plaintiff's Motion as seeks to compel Ethicon to supplement its answer to interrogatory no. 6 is denied.

    f. <u>Interrogatory No. 7</u>

Plaintiff's interrogatory no. 7 asked Ethicon to identify "each and every" employee or person hired to market or sell the 3D Patch and to: (a) identify the author(s) of marketing materials for the 3D Patch; (b) identify the distributors of the 3D Patch; (c) state where the 3D Patch is "manufactured, shipped and processed after manufacturing in [Ethicon's] Supply Chain;" (d) identify all individuals responsible for writing instructions for the use of the 3D Patch; (e) identify all individuals responsible for post market quality and safety assurance; (f) state the number of 3D Patches sold since the product entered the market; and (g) state the gross sales and profit since the 3D Patch entered the market.

In response to (a) and (d), Ethicon identified one individual with responsibilities for marketing and sales of the 3D Patch as well as two sales representatives Ethicon believed were assigned to the relevant territory at the time of Plaintiff's implantation surgery. In response to (e), Ethicon identified 5 current or former employees responsible for post-marketing surveillance for product safety and investigation of complaints about the 3D Patch. Ethicon responded to (b) and (f) by stating that Johnson & Johnson distributes the 3D Patch, and that approximately 24,679 units had been sold since 2003. It is not clear whether Ethicon answered subpart (g). The company objected on relevance and burden grounds to further responding to the interrogatory. Plaintiff's objection to Ethicon's response to interrogatory number 7 is the same as his objection to Ethicon's answer to interrogatory number 6: he claims that Ethicon failed to provide specific answers to the questions and improperly objected on relevancy grounds without "identifying what it is claiming is not relevant in relation to the claims presented in the Plaintiff's Complaint" (Dkt. No. 31-1 at 23). Again, it is not true that Ethicon has failed to provide specific information in response to the interrogatory. Ethicon identified its head of marketing and other current and former employees responsible for marketing. It provided a chart showing sales

figures for the 3D Patch from 2003 to the present. While Ethicon may not have provided information about gross sales and profit, Plaintiff has not explained to the court why such information would be relevant. *See Green v. Manhattanville Coll.*, 661 N.E.2d 123, 126 (Mass. App. Ct. 1996) (punitive damages are not available under Massachusetts law in "ordinary tort and contract actions"). Again, Plaintiff's undeveloped and unsupported assertion is insufficient to meet his initial burden of establishing the relevance of any additional information he may be seeking. Nor is it apparent that his requests are proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, so much of Plaintiff's Motion as seeks supplementation of Ethicon's answer to interrogatory no. 7 is denied.

### III. CONCLUSION

For the foregoing reasons, and on the terms set forth in this Order, Plaintiff's Motion to Compel Further Answers to Interrogatories from Defendant Ethicon, Inc. (Dkt. No. 31-1), attached as an exhibit to Plaintiff's Motion for Court to Hear Plaintiff's Motion to Compel Answers to Interrogatories which was Pending Before Superior Court on Removal (Dkt. No. 31), is DENIED.

IT IS SO ORDERED.

Dated: August 24, 2018 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE