UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIGUEL RAMOS TORRES,              )<br>    Plaintiff,                                    )<br>                                                          )<br>v.                                                       )<br>                                                          )<br>JOHNSON & JOHNSON, et al.      )<br>    Defendants.                              ) | Civil Action No. 18-cv-10566-MGM |

MEMORANDUM AND ORDER CONCERNING PLAINTIFF'S MOTIONS FOR A
PROTECTIVE ORDER AND TO QUASH SUBPOENAS DIRECTED
TO SCOTT GUELCHER, Ph.D
(Dkt. Nos. 219, 221)

ROBERTSON, U.S.M.J.

I.   Introduction

Plaintiff Miguel Ramos Torres alleges significant injuries arising from defects in a "polypropylene, prolene mesh hernia system product[]" that was used to repair Plaintiff's hernia in 2010 (Dkt. No. 20, Compl. ¶¶ 8-9). The defendants are Johnson & Johnson and Ethicon, Inc. ("Defendants"), alleged to be the manufacturers and distributors of the mesh system (Compl. ¶ 7). Before the court are two motions filed by Plaintiff seeking to quash Rule 45 subpoenas served by Defendants on Scott Guelcher, Ph.D., one of Plaintiff's experts, and Guelcher's limited liability company, and for sanctions ("Plaintiff's Motions"). For the reasons set forth below, the motions are DENIED.

II.   Relevant Background

This single plaintiff case is being litigated against a backdrop of widespread litigation in this and other countries against Defendants based on allegations that polypropylene mesh in pelvic and abdominal repair systems that were designed and marketed by Defendants was defective and caused injuries. According to Defendants, Guelcher was first hired as a plaintiff's

1

expert in pelvic mesh litigation in 2014 (Dkt. No. 228 at 7).  He is one of five authors, with A.D. Talley, B.R. Rogers, V.V. Iakovlev, and R.F. Dunn, of an article titled Oxidation and Degradation of Polypropylene Transvaginal Mesh, published in the *Journal of Biomaterials Science, Polymer Edition* in 2017 (Dkt. No. 228-4) ("Talley Publication").  Guelcher attached corrections to the Talley Publication to the report he prepared as an expert in this case (Dkt. No. 228-3 at 30; Dkt. No. 229-1; Dkt. No. 229-2).  According to Defendants, Guelcher has not provided these corrections to Defendants in any of the other polypropylene mesh litigation cases in which he has served as an expert.  Defendants further contend that, although plaintiffs in multidistrict litigation were required to – and did – produce data underlying the Talley Publication (Dkt. No. 227-2), they did not produce the so-called XPS (x-ray photoelectron spectroscopy) data that was analyzed by Bridget R. Rogers, Ph.D., at the request of Dunn, one of the co-authors of the Talley Publication (Dkt. No. 227-1; Dkt. No. 237).

The parties negotiated an October 7, 2020 date for Guelcher's deposition.  Defendants issued their notice for Guelcher's deposition on September 25, 2020.  They served an amended notice, changing the start time of the deposition, on September 30, 2020 (Dkt. No. 228 at 5).  These notices requested production of an extensive list of documents (Dkt. No. 219-1; Dkt. No. 219-4).  On September 24, 2020, Defendants served two identical Rule 45 subpoenas duces tecum on Guelcher and Guelcher Consulting LLC.  The subpoenas were served in-hand at Guelcher's home.  These subpoenas requested the production of some documents already requested in the Guelcher deposition notices.  In addition, and most pertinently for purposes of this motion, these subpoenas requested the production of:

- Everything that you [Guelcher] reviewed in connection with preparing the document attached hereto as "Exhibit 1" ("*Corrections to Talley et al.* JBS Polym Ed 2017").  This includes, but is not limited to, all raw data, pictures, documents, spreadsheets, and files (all in original file format) that you reviewed and/or relied on when drafting Exhibit 1.

- Everything that you [Guelcher] reviewed in connection with preparing the document attached hereto as Exhibit 2 ("*Corrections to Talley et al.* JBS Polym Ed 2017"). This includes, but is not limited to, all raw data, pictures, documents, spreadsheets, and files (all in original file format) that you reviewed and/or relied on when drafting Exhibit 2.

- Everything that you [Guelcher] reviewed in connection with preparing the document attached hereto Exhibit 3. This includes, but is not limited to, all raw data, pictures, documents, spreadsheets, and files (all in original file format) that you reviewed and/or relied on when drafting Exhibit 3.

(Dkt. No. 219-2 at 5-15; Dkt. No. 219-3 at 5-15).

When neither Plaintiff nor Guelcher responded to the subpoenas requesting the data related to Guelcher's corrections to the Talley publication and the XPS data in advance of the October 7, 2020 date agreed upon for Guelcher's deposition, Defendants cancelled the deposition (Dkt. No. 228 at 5).

### III. Discussion

Plaintiff contends that Defendants' conduct is demonstrably harassing and dilatory in that Defendants have taken Guelcher's deposition in other cases, already have the data and documents sought in the deposition notices and the subpoenas and know that Guelcher does not possess or control the material they seek. Plaintiff further contends that Guelcher's corrections to the Talley Publication are a red herring because the Talley Publication is not critically important to Guelcher's expert opinions in this case. Plaintiff requests a protective order quashing Defendants' subpoenas directed at Guelcher and his company and that Defendants be required to reimburse Guelcher for the time he spent preparing for an October 7, 2020 deposition and the time Plaintiff spent preparing Plaintiff's Motions.

The admissibility of Guelcher's expert opinions has been contested with some – albeit by no means complete – success in other polypropylene mesh litigation. *See, e.g., Salinero v. Johnson & Johnson*, Case No. 1:18-cv-23643-UU, 2019 WL 7753453, at *14-17 (S.D. Fla. Sept.

5, 2019) (excluding some aspects of Guelcher's proposed expert testimony and admitting some aspects of that testimony).  The admissibility of Guelcher's opinions will surely be at issue in this case.  Plaintiff is correct that Defendants' opposition to Plaintiff's Motions misstates Guelcher's reliance on the Talley Publication in the expert report he submitted in this case.  To demonstrate the importance of the Talley Publication to Guelcher's expert report, Defendants' opposition to Plaintiff's Motion sets out three quotations from Guelcher's expert report that purportedly refer to or rely on the Talley Publication.  In fact, only one of these three quotations is supported by reference to the Talley Publication.[1]  Nonetheless, Guelcher is a co-author of the Talley Publication, supports the content of his expert report in this case by at least nine references to the Talley Publication, and has served corrections to the Talley Publication in this case.  Plaintiff has not disputed Defendants' representation that Guelcher did not produce corrections to the Talley Publication in any other case against Defendants in which he has served as an expert.  Defendants contend that they are entitled to production of documents and data concerning these corrections and the XPS data to which the corrections refer in advance of taking Guelcher's deposition (Dkt. No. 228 at 1).  Furthermore, they say, if Guelcher does not have custody or control of any such documents or data, he only had to say so in response to the subpoenas to himself and his company and the deposition could and would have gone forward.  In these circumstances, they argue, Plaintiff's Motion should be denied.

As has been true on other occasions in this case, this dispute might have been avoided if counsel had complied with their obligations under Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(a)(2) to confer by speaking with each other in a genuine good faith attempt to clarify their

---

[1] The only material accurately represented by Defendants in their opposition as relying on the Talley Publication appears on page 10 of the Guelcher expert report, not, as represented by Defendants, on page 7 (Dkt. No. 228 at 2-3; Dkt. No. 228-3).

respective positions. Defendants' Rule 45 subpoenas to Guelcher and his company were an appropriate vehicle for compelling the production of material from Guelcher. *See Smith v. Transducer Tech., Inc.*, No. CIV.1995/28, 2000 WL 1717332, at *2 (D.V.I. July 3, 2000) ("a Notice of Deposition to the opposing party is not a proper vehicle to compel production of documents from an expert witness at such expert's deposition. A Rule 45 subpoena *duces tecum* in conjunction with a properly noticed deposition may do so (subject however to any Rule 26 limitations)"). Further, "Rule 26(a)(2) creates a mandatory expert disclosure requirement that includes the automatic disclosure of 'facts or data considered' by an expert in formulating an expert opinion." *J JI Int'l, Inc. v. The Bazar Grp., Inc.*, C.A. No. 11-206ML, 2013 WL 3071299, at *4 (D.R.I. Apr. 8, 2013) (citing Fed. R. Civ. P. 26(a)(2)(B)(ii); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 263 (D. Mass. 2010)). "The requirement is self-executing and does not countenance selective disclosure." *Id.* (citing *TG Plastics Trading Co. v. Toray Plastics (Am.), Inc.*, No. CA 09-336M, 2013 WL 433118, at *3 (D.R.I. Feb. 1. 2013)). Guelcher indicates that after his deposition in the *Salinero* case, he "asked Dr. Rogers to correct the Supplemental Data" (Dkt. No. 232-1 at 2 ¶ 6). Although it is possible, it seems unlikely that Guelcher's request to Rogers did not result in the creation of any tangible communications or other material. It should go without saying that if Guelcher possesses any documents or records, be they emails, notes, letters, retained voicemail messages, reports, electronically stored data, or any other material concerning the corrections to the Talley Publication that Guelcher attached to his expert report or concerning the XPS data that he has not already produced, Defendants are entitled to that material in advance of Guelcher's deposition. *See, e.g., id.* (delineating scope of self-executing expert disclosure requirements, noting that those requirements extend to raw survey data; citing cases). It is not sufficient for Guelcher to say in a filing in support of a

motion for a protective order, as he does in his October 6, 2020 affidavit, that "[t]he Talley Correction exhibit provided is the document itself and I can provide oral testimony as to the document," (Dkt. 219-7 at 2, ¶ 14), whatever that is supposed to mean.  If Guelcher has any material in his possession, custody or control that is responsive to any of the three requests set out above that has not been produced, he must produce that material in advance of his deposition.  If he does not have any such material, then he must so state.  Following clarification on this point, Guelcher's deposition should go forward forthwith.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motions are Denied.  No fees or costs to either party.

It is so ordered.

Dated: January 26, 2021                                                                      Katherine A. Robertson
                                                                                             KATHERINE A. ROBERTSON
                                                                                             U.S. MAGISTRATE JUDGE